Kyle May
Andrew N. Hart
MAY, RAMMELL & WELLS, CHTD
P.O. Box 370 / 216 West Whitman
Pocatello, Idaho  83204
Telephone:  (208) 233-0132
Facsimile:  (208) 234-2961
Idaho State Bar No. 9819
Idaho State Bar No. 10714

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY SHAW<br><br>     Plaintiff,<br><br>vs.<br><br>TWIN FALLS COUNTY; TWIN FALLS COUNTY SHERIFF'S DEPARTMENT; TWIN FALLS COUNTY JAIL; SHERIFF TOM CARTER, in his official and individual capacity; RONA SIEGERT in her official and individual capacity; BEVERLY LAMMERS in her official and individual capacity; GILEAN GOODMAN in her official and individual capacity; LORA ROBERTS in her official and individual capacity; TIA CONRAD in her official and individual capacity; THOMAS BURBIE in his official and individual capacity; CORPORAL HALL in his official and individual capacity; IVY MEDICAL PLLC; and JOHN and JANE DOES I-XX, in their official and individual capacities,<br><br>     Defendants. | **COMPLAINT AND JURY DEMAND**<br><br><br>Civil No.: |

COMES NOW Plaintiff GARY SHAW, by and through his attorney, Kyle May  of the law firm of May, Rammell, and Wells, Chtd. and complain as follows:

## PRELIMINARY STATEMENT

Gary Shaw ("Mr. Shaw") was a pretrial detainee at the Twin Falls County Jail (the "Jail"). On December 26th, 2018, Mr. Shaw underwent what should have been a simple medical procedure at the Jail. However, due to the negligence and tortious conduct or misconduct of Defendants, Mr. Shaw was left with a large hole in his abdomen that went all the way to his innards. For approximately three days, Defendants refused to provide any form of adequate medical treatment for Mr. Shaw who was forced to bleed from an open wound and suffer in excruciating pain. Eventually, Mr. Shaw was transported to a hospital for emergency surgery which has left Mr. Shaw's abdomen permanently scarred.

The acts (or failures) of the Defendants described herein were in violation of 42 U.S.C. § 1983 and the United States Constitution, were undertaken by the Defendants and each of them under color of state law, particularly the statutes, ordinances, regulations, policies, customs, practices, and usages of, and under the authority of, Defendant Twin Falls County, and the individual offices of Defendants as officers, agents, contractors, and/or employees of Defendant Twin Falls County.

Plaintiff seeks relief for the Defendants' violations of Mr. Shaw's rights guaranteed by the United States Constitution, including under the Eighth and/or Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and for the Defendants' violations of Mr. Shaw's rights under the laws of the State of Idaho  and

the Constitution of the State of Idaho. Plaintiff seeks damages, both compensatory and punitive; affirmative relief; an award of attorney's fees, costs, and interest; and other and further relief as is just and equitable.

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and federal law, particularly under the provisions of the Eighth and/or Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3. The claims made in this Complaint occurred and arose in the State of Idaho, in this District. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

4. Jurisdiction for violations of the Idaho Constitution is founded upon supplemental jurisdiction because the claims of violations of federal law are substantial and the supplemental claims derive from a common nucleus of operative facts and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Plaintiff is seeking damages under federal and state law pursuant to the claims for relief specified below.

6. Attorney fees and costs are requested pursuant to 42 U.S.C. § 1988.

7. This Court also has jurisdiction over any State claims Plaintiff has brought, pursuant to 28 U.S.C. § 1367.

## PARTIES

8.  Plaintiff Garry Shaw ("Mr. Shaw") is a citizen of the United States of America.

9.  At all relevant times herein, Mr. Shaw was a pre-trial detainee in custody at the Twin Falls County Jail ("Jail") located in Twin Falls County Idaho.

10. At all relevant times herein, Defendant Tom Carter ("Sheriff Carter") was the elected Sheriff of Twin Falls County. As the Sheriff, he was the policymaker for the Twin Falls County Sheriff's Office and all of the facilities that the Sheriff's Office oversaw or managed.

11. As relevant to this case, Sheriff Carter and the Twin Falls County Sheriff's Office had the responsibility to manage, create policy for, and administer county policies applicable to the Jail that Mr. Shaw was housed in. Sheriff Carter was also responsible for administering and training employees and contractors who attended to inmates with mental and physical health problems. Mr. Shaw is suing Sheriff Carter in his official and individual capacity.

12. At all relevant times herein, Defendant Twin Falls County ("TFC") was the employer, operator, and/or administrator of the Jail, and was a political subdivision organized and existing under the laws of the State of Idaho.

13. TFC, and its agents, are state actors and are responsible for the day-to-day running of the Jail, as well as the policy-making, training, and supervision of the employees of the Jail. Among other things, TFC was responsible for training and supervising its employees to

manage and attend to inmates, like Mr. Shaw who had medical and health issues and concerns.

14. Defendant Ivy Medical PllC. ("Ivy") is an Idaho Corporation. Ivy was contracted by TWC, and as such, was a "state actor" employed by the TWC. Ivy was responsible for supplying, administering, and training employees and contractors who attended to the health needs of inmates, including Mr. Shaw. Mr. Shaw is suing Ivy in its official and corporate capacities. Additionally, Mr. Shaw is suing Ivy in its capacity as a principal for the negligent and/or otherwise wrongful acts of its agents.

15. At all relevant times herein, Defendant Beverly Lammers, ("Ms. Lammers") was a nurse practitioner and provider of healthcare services at the Jail. She was contracted by TFC and/or Ivy and as such, was a "state actor," employed by TFC Ms. Lammers was responsible for attending to the health needs of inmates, including Mr. Shaw. Mr. Shaw is suing Ms. Lammers in her official and individual capacity.

16. At all relevant times herein, Defendant Gilean Goodman, ("Ms. Goodman") was a nurse, and a provider of healthcare services at the Jail. She was contracted by TFC and/or Ivy and as such, was a "state actor," employed by TFC. Ms. Goodman was responsible for attending to the health needs of inmates, including Mr. Shaw. Mr. Shaw is suing Ms. Goodman in her official and individual capacity.

17. At all relevant times herein, Defendant Lora Roberts, ("Ms. Roberts") was a provider of healthcare services at the Jail. She was contracted by TFC and/or Ivy and as such, was a "state actor," employed by TFC. Ms. Roberts was responsible for attending to the health

needs of inmates, including Mr. Shaw. Mr. Shaw is suing Ms. Roberts in her official and individual capacity.

18. At all relevant times herein, Defendant Tia Conrad, ("Ms. Conrad") was a provider of healthcare services at the Jail. She was contracted by TFC and/or Ivy and as such, was a "state actor," employed by TFC. Ms. Conrad was responsible for attending to the health needs of inmates, including Mr. Shaw. Mr. Shaw is suing Ms. Conrad in her official and individual capacity.

19. At all relevant times herein, Defendant Thomas Burbie, ("Mr. Burbie") was a provider of healthcare services at the Jail. He was contracted by TFC and/or Ivy and as such, was a "state actor," employed by TFC. Mr. Burbie was responsible for attending to the health needs of inmates, including Mr. Shaw. Mr. Shaw is suing Mr. Burbie in his official and individual capacity.

20. At all relevant times herein, Defendant Corporal Hall ("Mr. Hall") and other jail staff were employed by TFC at the Jail. Mr. Hall, along with other jail staff, are individuals who were employed or contracted by Twin Falls County and as such, were "state actors." Mr. Hall, and other jail staff, were responsible for administering and attending to the health and safety, and basic needs of inmates and pretrial detainees, including Mr. Shaw. Mr. Shaw is suing Mr. Hall in his official and individual capacity.

21. At all relevant times herein, Doe Officers 1-10 are here identified as unnamed individual(s) were employed as guards, supervisors, or managers at the Jail, and as such, were state actors. Plaintiff has not yet been able to determine their exact identities, but

will do so during fact discovery. They are individuals who were directly involved and participated in Mr. Shaw's control and care, and were knowledgeable about his condition. Their deliberate indifference to Mr. Shaw's serious medical needs caused his undue suffering and injuries. Mr. Shaw is suing Doe Officers 1-10 in their individual and official capacities as guards, supervisors, or managers at the Jail.

22. At all relevant times herein, Does 11-20 are here identified as unnamed individual(s) who were employed by TWC, and as such, were "state actors." Plaintiff has not yet been able to determine their exact identities, but will do so during fact discovery. They are individuals who were directly involved and participated in Mr. Shaw's control and care, and were knowledgeable about his condition. Their deliberate indifference to Mr. Shaw's serious medical needs caused his undue suffering and injuries. Mr. Shaw is suing Does 11-20 in their individual and official capacities.

## FACTUAL ALLEGATIONS

23. Mr. Shaw was booked into the Jail on or around December 26, 2018.

24. At all times relevant hereto, Mr. Shaw was a pretrial detainee who had not been convicted of the crime that he had been accused of.

25. As a pretrial detainee, Mr. Shaw was entitled to be free from punishment and entitled to medical treatment.

26. On or around December 26, 2020, Mr. Shaw was seen by Ms. Lammers for treatment of an ulcer on his abdomen.

27. Mr. Shaw informed Ms. Lammers that he had previously surgeries on his abdomen including a prior hernia surgery.

28. Ms. Lammers could see that Mr. Shaw had undergone prior surgeries due to the scars on his abdomen.

29. Ms. Lammers diagnosed Mr. Shaw with an infected ulcer and proceeded to operate on Mr. Shaw in an apparent attempt to treat said ulcer.

30. Mr. Shaw had had similar procedures performed in the past and was generally aware of how they were done.

31. Ms. Lammers did not use the proper care or caution in operating on Mr. Shaw.

32. Ms. Lammers conducted the procedure in a non sterile environment in accordance to existing Jail policies and procedures

33. Also, in accordance with Jail policy and procedure, Ms. Lammers conducted the procedure in the presence of around three guards who were not wearing sterile or surgical attire, and whose presence was not necessary.

34. Among other negligent and reckless acts and omissions, Ms. Lammers cut deeper than was necessary and cut through the mesh used to surgically repair Mr. Shaw's prior hernia.

35. Ms. Lammers negligently cut too deep into Mr. Shaw's abdomen and even replaced her dulled scalpel multiple times during the procedure.

36. Mr. Shaw protested, and asked if she was supposed to cut that deep.

37. Ms. Lammers continued to cut and acknowledged that she could see Mr. Shaw's mesh.

COMPLAINT AND JURY DEMAND                                                                     8

38. Even when Ms. Lammers exposed the surgical mesh which had been used to repair Mr. Shaw's hernia, she continued to cut into his abdomen.

39. Ms. Lammers even removed pieces of the mesh inside of Mr. Shaw's abdomen.

40. By cutting into the mesh, Ms. Lammers caused serious and life threatening harm to Mr. Shaw.

41. Ms. Lammers acted negligently by cutting so deep into Mr. Shaw's abdomen and then by cutting into the mesh used to repair Mr. Shaw's hernia.

42. Ms. Lammers also acted negligently/tortiously by failing to provide Mr. Shaw with the proper medical care needed to correct the damage caused by her own negligent and tortious acts.

43. Ms. Lammers knew, or should have known that she had caused Mr. Shaw to suffer a serious injury which needed immediate treatment.

44. Despite this knowledge, Ms. Lammers did not provide adequate medical care and merely packed Mr. Shaw's wound with femenine pads and provided him with tylenol.

45. Ms. Goodman was also present at the time of this procedure and negligently failed to provide Mr. Shaw with adequate medical treatment.

46. Mr. Shaw quickly bled through the pads and was in a great deal of pain and discomfort.

47. Mr. Shaw asked Ms. Goodman and/or Ms. Lammers why his wound was being covered by feminine pads rather than gauze, and was told that feminine pads were cheaper.

48. Mr. Shaw bled through the first pad before he even left Ms. Goodman and Ms. Lammers.

49. Despite the obvious seriousness of his condition, Defendants and other jail staff refused to provide proper emergency care and sent Mr. Shaw back to his cell.

50. Rather than send Mr. Shaw back to a clean environment, Defendants sent Mr. Shaw to a dirty and overcrowded cell, in accordance with the Jails policy and customs.

51. For approximately the next three days, Mr. Shaw suffered severe pain and discomfort as he continued to bleed through his open wound.

52. Mr. Shaw had to have defendants change the feminine pads, which were used to cover his dressings, several times a day.

53. On the second day, Mr. Shaw had to request a new jumpsuit from Defendants around five different times, because he kept bleeding through them.

54. During this time Mr. Shaw repeatedly told Defendants and other jail staff of his condition and pain and requested emergency treatment.

55. Mr. Shaw's injury, and Defendants' disregard for his care, posed a substantial risk of serious harm, including, but not limited to, infection, blood loss, and internal injury.

56. Mr. Shaw's injuries were such that a reasonable doctor or patient would find them important and worthy of treatment.

57. Mr. Shaw's injuries significantly affected his individual daily activities.

58. Mr. Shaw's injuries caused the existence of chronic and substantial pain.

59. Mr. Shaw's treatment constitutes a deprivation of the minimal civilized measures of life's necessities as it was obvious that his wound required further and immediate medical attention.

60. Mr. Shaw was even seen by Ms. Lyndsey, Ms. Goodman, Ms. Roberts, Ms. Conrad, and Mr. Burbie (collectively "Medical Defendants") who all specifically treated and/or changed the dressings on Mr. Shaw's open and bleeding wound.

61. In total, Mr. Shaw was seen at least twelve different times by the Medical Defendants who only changed the dressings on Mr. Shaw's wound and failed to provide him with adequate or necessary medical treatment.

62. Mr. Shaw also expressed the need for help to other jail staff including Does I-XX.

63. Corporal Hall and other jail staff, including the Medical Defendants, could see that Mr. Shaw was bleeding through his dressings and clothes.

64. Defendants ignored Mr. Shaw's cries for help and only changed his bled through dressings and jumpsuits during this time.

65. Eventually, Mr. Shaw's innards actually protruded through the hole in his abdomen.

66. Only at this time did any Defendants or Jail staff attempt to get Mr. Shaw the medical care he needed.

67. Ms. Goodman attended to Mr. Shaw and called Ms. Lammers while Mr. Shaw was in the room.

68. Ms. Goodman informed Ms. Lammers that Mr. Shaw's innards had protruded through his stomach wound.

69. Rather than insist that Mr. Shaw receive the medical treatment he had needed for three days, Ms. Lammers instructed Ms. Goodman to push it back in and then try to schedule an appointment for Mr. Shaw to see a doctor the next day;

70. This was done pursuant to the Jails policies and procedures which did not prioritize allowing detainees like Mr. Shaw to receive the emergency medical care when needed.

71. Defendants eventually transferred Mr. Shaw to the hospital where he received emergency surgery to repair the damage that Defendants had caused.

72. Mr. Shaw spent the next ten days recovering in the hospital.

73. During the operation, doctors were unable to remove all of the mesh that had been cut by Ms. Lammers.

74. Mr. Shaw then developed an infection in his abdomen due to Defendants' negligent and tortious conduct.

75. Mr. Shaw's infection was approximately caused by, and was a foreseeable outcome of, Defendants negligent and tortious conduct.

76. Though he was transferred to prison shortly after, Mr. Shaw suffered from the effects of the infection for around a year.

77. Mr. Shaw suffered bouts of severe  and recurring bouts of abdominal pain.

78. Eventually, Mr. Shaw was required to undergo a second operation to clean out the damage mesh and infection which were the result of Defendants' negligent and tortious conduct.

79. This second surgery caused Mr. Shaw's abdomen to become severely disfigured.

80. At all times relevant, the named Defendants were responsible for the health care of Mr. Shaw.

81. Defendants' failure and refusal to provide Mr. Shaw with proper medical evaluation and care constitutes a deliberate indifference to Mr. Shaw's constitutional rights, and ultimately lead to his unnecessary suffering and damages.

82. Defendants Twin Falls County, Twin Falls County Sheriff's Department, Twin Falls County Jail, Sheriff Tom Carter, Ivy Medical Pllc, and Rona Siegert (collectively "Supervising Defendants") are all supervising officials, or otherwise responsible for assuring that detainees received necessary medical services. They all had the power and duty to alleviate the conditions, policies, and customs, which led to the constitutional violations Mr. Shaw suffered, but refused or failed to do so.

83. The Supervising Defendants were responsible for ensuring that nurses and staff at the Jail were trained to recognize and treat inmates medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a policy, custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor Jail staff were able to recognize and provide adequate or competent treatment for Mr. Shaw's medical conditions as they occurred on December 26, 2018 and after.

84. As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical needs and safety of inmates, Defendants were allowed or encouraged to refuse to provide adequate medical treatment to Mr. Shaw which led to his suffering and damages.

85. Despite the fact that treating an ulcer on a patient with a prior hernia surgery, like Mr. Shaw, is a fairly common medical procedure, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that Ms. Lammers was properly trained and/or qualified to perform such a procedure.

86. Even though an open and bleeding abdominal wound is commonly recognized as a serious medical condition, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that staff employed at the Jail, including nurses, housing officers, and other staff, were trained to provide proper care for inmates who had such a life threatening injury. They further failed to provide a safe, clean, sanitary, and proper environment for incarcerated individuals.

87. Supervising Defendants, with deliberate indifference towards the health and safety of all incarcerated people, created policies and customs where inmates in need of medical treatment were disregarded, which led multiple Jail staff, including Defendants, to ignore Mr. Shaw's immediate and obvious need for medical attention, not to mention Mr. Shaw's own requests to be taken to the hospital.

88. As a result of these policies, customs described in paragraphs 45–50, Mr. Shaw did not receive the adequate and necessary treatment that he was entitled to. This in turn caused Mr. Shaw's unnecessary suffering and damages

89. Indicative of the culture, policies, procedures, and customs permitted, condoned, and perpetuated by the Supervising Defendants which led to the grossly deficient and indifferent medical care system at the Jail:

a.  Joseph Jackson Baxter, an inmate at Twin Falls County Jail, was denied treatment for a broken jaw for approximately four months. Once the jaw was surgically fixed, Mr. Baxter was not allowed to be evaluated by a doctor, despite making multiple requests to Jail staff to see one, and his jaw became infected twice, resulting in Mr. Baxter losing part of his jaw and some teeth (2019).

b.  Kody Gambrell, an inmate at the Twin Falls County Jail, was refused medical treatment for severe head injuries he received after being beaten by jail staff. Mr. Gambrell did not receive treatment until his family obtained a court order commanding the Jail to allow him to receive medical care (2012).

c.  James Gerndon, an inmate at Twin Falls County Jail, told Jail staff that he had a lump on his leg that doctors had told him needs to be removed. Jail staff denied this request for medical treatment. When Mr. Gerndon was transferred to another Prison the lump was removed and found to be cancerous and that the cancer had spread due to the delay in removing the tumor. (2003)

90. Along with these other inmates failing to receive the necessary treatment it is clear that TFC had a widespread unconstitutional policy, practice, and/or custom in providing the necessary medical care to their inmates.

91. The Supervising Defendants knew or should have known of these events and others which indicated a risk of serious harm and the probable violation of inmate's, like Mr. Shaw, constitutional rights.

92. The Supervising Defendants knew of the policies and customs which created a serious risk of harm and constitutional violations of the inmates, including Mr. Shaw.

93. The Supervising Defendants were responsible for ensuring that incarcerated people at the Jail received timely, responsive, quality medical care.

94. Supervising Defendants were also responsible to arrange for all levels of healthcare for inmates; to assure quality accessibility, and timeliness of health services for inmates; for the training and supervision of all medical personnel; and for the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, and officially sanctioned customs relating to the provisions of medical care at the Jail.

95. The Supervising Defendants failed in meeting those responsibilities as evidenced by Mr. Shaw's treatment, suffering, and damages, the actions and misactions of all Defendants which proximately caused Mr. Shaw's damages, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 52.

96. The Supervising Defendants condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Mr. Shaw.

97. This culture, customs, and policies, includes, but is not limited to, unreasonable barriers to medical treatment, the failures of Jail staff to make certain that nurses or physicians respond to serious medical conditions, and failure of nurses to evaluate and refer for appropriate diagnosis and treatment to those detainees who are experiencing life threatening injuries.

98. By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, the Supervising Defendants have contributed to, and caused Mr. Shaw's damages.

99. Mr. Shaw's unnecessary suffering and damages were caused by Defendants' tortious and unconstitutional conduct, and Defendants are liable to Mr. Shaw for all of his damages.

## FIRST CLAIM FOR RELIEF

### Failure to Provide Proper Medical Care

100.   The preceding paragraphs are re-alleged and fully incorporated herein by reference.

101.   Defendants had a duty under the Constitutions of the United States and the State of Idaho, and pursuant to the laws and statutes of Idaho, to provide timely medical treatment for medical conditions and injuries about which they knew or should have known.

102.   Defendants knew, or should have known, about Mr. Shaw's medical needs, and with deliberate indifference to such medical needs, acted or failed to act in such a way as to deprive Mr. Shaw of the necessary and adequate medical care, thus resulting in unnecessary pain and Mr. Shaw's damages.

103.   Such acts and/or omissions of the Defendants violated rights secured to Mr. Shaw under the Eighth and Fourteenth Amendment to the United States Constitution.

104.    Defendants knew of Mr. Shaw's medical needs, and with deliberate indifference to his medical needs, acted or failed to act in such manner as to prevent him from obtaining seriously needed medical treatment and care.

105.    Defendants prevented and delayed needed medical treatment and care from reaching Mr. Shaw, thus causing the unnecessary suffering and damages.

106.    Defendants breached their duties and/or were deliberately indifferent to Mr. Shaw's medical needs by, among other things:

a.      Disregarding Mr. Shaw's complaints of severe pain and bleeding and requests to receive treatment;

b.      Allowing Shaw's obvious and visible symptoms and worsening condition to go untreated and/or ignoring treatment that was necessary and required under the circumstances;

c.      Ignoring Mr. Shaw's symptoms and pleas for help after his negligent ulcer procedure, ignoring objective and obvious conditions or symptoms for which any reasonable person would have recognized required immediate and additional care, including but not limited to, the visible amount of bleeding which soaked through Mr. Shaw's dressings;

d.      Refusing to act on Mr. Shaw's obvious need to be taken to a hospital or other facility where treatment of his symptoms and condition could be properly addressed, consistent with the level of danger to Mr. Shaw's health;

f.      Failing to have adequate policies and/or procedures in place to ensure the medical safety of Mr. Shaw and others experiencing open wounds requiring emergency treatment;

g.    Failing to adequately supervise or train its employees and contractors in accordance with appropriate policies, and/or by failing to attend to such policies and procedures intended to ensure that inmates, such as Mr. Shaw, were provided a level of health care that a civilized society would think necessary;

h.    Failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to ensure the reasonable safety and health of inmates and with serious medical issues, such as Mr. Shaw;

i.    Failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to monitor inmates at risk of serious medical complications;

j.    And/or failing to intervene under the circumstances where it was obvious that the medical care and attention Defendants were giving to Mr. Shaw were inadequate, causing Mr. Shaw to suffer.

107.    Repeatedly, and over an approximate three day period, Defendants were deliberately indifferent to Mr. Shaw's serious medical needs, including the fact that he was suffering from a deep and open abdominal wound that was constantly bleeding through his jumpsuit.

108.    Mr. Shaw's need for hospitalization or additional medical intervention under the circumstances was manifestly foreseeable and objectively necessary.

109.   Mr. Shaw was caused to endure prolonged pain and suffering leading up to, and after, his eventual corrective surgery, even though this pain and suffering could have been mitigated by allowing Mr. Shaw to receive immediate medical attention after Ms. Beverly negligently caused Mr. Shaw's injuries.

110.   The Supervising Defendants were responsible for ensuring that nurses and staff at the Jail were trained to recognize and treat inmates medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor jail staff were able to recognize and provide adequate treatment for Mr. Shaw's medical conditions.

111.   As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical needs and safety of inmates, Defendants were allowed or encouraged to refuse to provide adequate medical treatment to Mr. Shaw which led to his suffering and damages.

112.   Despite the fact that treating an ulcer on a patient with a prior hernia surgery, like Mr. Shaw, is a fairly common medical procedure, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that Ms. Lammers was properly trained and/or qualified to perform such a procedure.

113.   Even though an open and bleeding abdominal wound is commonly recognized as a serious medical condition, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that staff employed at the Jail,

COMPLAINT AND JURY DEMAND                                                              20

including nurses, housing officers, and other staff, were trained to provide proper care for inmates who had such a life threatening injury.

114.    Supervising Defendants, with deliberate indifference towards the health and safety of all incarcerated people, created policies and customs where inmates in need of medical treatment were disregarded and treated with disdain. This led to Defendants' and jail staffs' disregard for Mr. Shaw's obvious need for medical care and requests for help.

115.    As a result of these policies, customs described in paragraphs 45–50, Mr. Shaw did not receive the adequate and necessary treatment that he was entitled to. This in turn caused Mr. Shaw's unnecessary suffering and damages.

116.    The policies and customs implemented by the Supervising Defendants led to the infliction of unconstitutional punishment on Mr. Shaw, including the disregard of his serious medical conditions, refusing him adequate and reasonable medical treatment, in violation of his due process rights under the United States and Idaho Constitutions.

117.    Mr. Shaw has suffered damages and losses, including but not limited to the denial of his rights to reasonable and humane medical care, denial of his Constitutional liberty and bodily integrity interests, for pain, suffering, humiliation, and permanent disfigurement.

118.    Plaintiff is entitled to compensation for the deprivation of his constitutional rights and all damages resulting from those deprivations.

119.    Due to the egregious nature of Defendants' indifference and reckless disregard for the health, safety, and the very life of Mr. Shaw, Plaintiff seeks punitive damages against said Defendants as may be allowed by law.

120.    Plaintiff  is entitled to attorney's fees and costs pursuant to 42 USC Section 1988, and

Idaho Code Section 12-121.

**SECOND CLAIM FOR RELIEF**

**Failure to Train and/or Supervise**

121.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

122.    Twin Falls County and Twin Falls County Jail are considered "persons" under 42

U.S.C. § 1983, and thus may be liable for causing constitutional deprivation.

123.     Defendants Twin Falls County, Twin Falls County Sheriff's Department, Twin Falls

County Jail, Ivy, Sheriff Tom Carter, and Rona Siegert, and other Twin Falls County

Correctional Officials may be held liable in damages for constitutional wrongs caused by

their failure to adequately train or supervise their subordinates.

124.    These Supervising Defendants foresaw, or should have foreseen, the possibility of

inmates in their custody who may suffer from serious health conditions when not

provided with adequate or necessary health care.

125.    These Defendants failed to provide adequate oversight, policies, procedures, or

training of their employees or contractors to reasonably provide for the safety and health

of inmates with such serious health conditions.

126.    In this case, these Defendants were deliberately indifferent to the health and safety of

Mr. Shaw, which caused his  unnecessary pain and damages.

127.    These Defendants, in their individual and official capacities, failed to provide

adequate policies, procedures, or training to their employees or contractors in instructing

and directing them to adequately monitor and respond to inmates with serious health conditions that subsequently lead to deep and open wounds or other life threatening conditions, which require treatment that was in addition to or different than the treatment provided by these Defendants.

128.    As a direct and proximate result of these Defendants' actions, inactions, and/or deliberate indifference, Mr. Shaw was deprived of his rights under the Fourteenth and Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, including being deprived of due process of law.

129.    The violation of Mr. Shaw's rights is actionable under 42 U.S.C. § 1983, and he is entitled to judgment against Defendants for damages in an amount to be determined at trial or hearing.

130.    Plaintiff is entitled to punitive damages, as may be allowed by law, due to Defendants' willful, wanton, and grossly reckless conduct.

131.    Plaintiff is entitled to attorney's fees and costs against Defendants under 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

**Unlawful Custom, Policy or Practice - Laxity and/or Indifference**

132.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

133.    Defendants had a policy, custom, or practice that tolerates commission of unconstitutional acts by its officers and/or employees.

134.   The Supervising Defendants and all employees or contractors of Defendants, who are in a position to set the policy, custom, or practice, are liable directly for the consequences of any unconstitutional acts by said persons.

135.   The County corrections officers and employees, Doe Defendants 1-20, were deliberately indifferent and failed to notice and/or intercede to help Mr. Shaw from being injured, or obtaining proper medical care after suffering an obvious and serious injury.

136.   This policy, custom or practice is evident by, among other things, repeatedly ignoring Mr. Shaw's pleas for help and the fact that he had an open wound which continued to bleed profusely through its dressings.

137.   The Defendants' conduct, through those officers and employees, constituted and/or evidenced a custom of laxity and disregard regarding the supervision and monitoring of the health and safety of Mr. Shaw, which custom was or became a de facto official policy.

138.   Defendants' actions in allowing such a policy, custom, or practice to develop and exist constituted deliberate indifference to the rights, health, and safety of Mr. Shaw.

139.   As a direct and proximate result of this custom of laxity and indifference, Mr. Shaw suffered and was deprived of his rights without due process of law, as applied through the Due Process Clause of the Fourteenth, Fourth, Fifth and Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

140.   As a direct and proximate result of this custom of laxity and indifference, Mr. Shaw suffered and was deprived of his rights to be free of cruel and unusual punishment and of

his life, liberty, and property, as applied through both the Eighth Amendment and Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

141.    Plaintiff is entitled to judgment against these Defendants for damages in an amount to be proved at trial or hearing.

142.    Plaintiff is further entitled to attorney fees and costs against Defendants under 42 U.S.C. § 1988.

143.    Plaintiff is further entitled to punitive damages as may be allowed by law due to Defendants' willful, wanton, and grossly reckless conduct.


## FOURTH CLAIM FOR RELIEF

### Negligence for Failure to Provide Medical Treatment

144.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

145.    The Medical Defendants, Corporal Hall,  Does I–XX, and other Jail staff owed a duty to Mr. Shaw by creating a special relationship with him to ensure for his basic needs, including, but not limited to, providing him with access to necessary medical care.

146.    The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff could see that Mr. Shaw was in need of further medical assistance for the fact that Mr. Shaw was in visible pain, was bleeding through his dressing and clothes, and had told Defendants of his condition.

147.    The Medical Defendants even visited with Mr. Shaw to examine his wound and were therefore aware of his condition.

148.    Mr. Shaw's condition was obvious and any objective and reasonable person, even without formal medical training, would have known that Mr. Shaw required emergency treatment in a hospital.

149.    The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff breached their duty to Mr. Shaw by failing to do what was necessary to ensure that Mr. Shaw received proper medical treatment.

150.    This failure to act was the direct cause of Mr. Shaw's pain and suffering and other damages.

151.    Due to The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff negligence, Mr. Shaw suffered three days of agony and a worsening condition.

152.    The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff are all responsible for Mr. Shaw's damages caused by their negligent conduct.

153.    The duty to ensure that Mr. Shaw received adequate and necessary medical treatment was within the scope of The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff's employment.

154.    The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff were acting as agents and employees of The Supervising Defendants and Does I–XX at all times relevant.

155.    The Supervising Defendants and Does I–XX are vicariously, jointly, and severally liable for Mr. Shaw's damages caused by the negligent conduct of The Medical Defendants, Corporal Hall, Does I–XX, and other Jail staff.

156.    Plaintiff is further entitled to attorney fees and costs against Defendants under Idaho

Code 6-918A, and Idaho Code 12-121, I.R.C.P. 54(e)

## FIFTH CLAIM FOR RELIEF

### Negligence Against Ms. Lammers

157.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

158.    Ms. Lammers  owed, or undertook, a duty to Mr. Shaw as a nurse practitioner and as

a Jail healthcare worker to perform all medical procedures in a safe and competent

manner.

159.    Ms. Lammers was negligent in performing the procedure on Mr. Shaw as she cut

deeper into Mr. Shaw than was necessary or safe and cut the mesh used to repair Mr.

Shaw's hernia. Her medical treatment fell below the local medical standard of care.

160.    Ms. Lammers was also negligent in failing to provide Mr. Shaw proper assistance

after causing him to suffer a deep and serious wound.

161.    Ms. Lammers breached her duty of care to Mr. Shaw.

162.    Mr. Shaw's condition was obvious and any objective and reasonable person, even

without formal medical training, would have known that Mr. Shaw required emergency

treatment in a hospital.

163.    Ms. Lammer's negligence was the direct cause of Mr. Shaw's pain and suffering and

other damages.

164.    Due to Ms. Lammer's negligence, Mr. Shaw suffered three days of agony and a

worsening condition.

165.   Ms. Lammers is responsible for Mr. Shaw's damages caused by their negligent conduct.

166.   The duty to perform Mr. Shaw's procedure in a safe and competent manner  was within the scope of Ms. Lammers' employment.

167.   Ms. Lammers was acting as an agent and employee of The Supervising Defendants and Does I–XX at all times relevant.

168.   Plaintiff is further entitled to attorney fees and costs against Defendants under Idaho Code 6-918A, and Idaho Code 12-121, I.R.C.P. 54(e)

<u>**SIXTH CLAIM FOR RELIEF**</u>

**MONELL CLAIM FOR SUPERVISING AND MUNICIPAL LIABILITY**

169.   The preceding paragraphs are re-alleged and fully incorporated herein by reference.

170.   The Supervising Defendants' tortious and negligent actions and misactions were the direct and proximate cause of Mr. Shaw's damages.

171.   The Supervising Defendants were either personally involved in the deprivation of Mr. Shaw's constitutional rights, or their wrongful conduct was the cause of his damages.

172.   The Supervising Defendants were responsible for ensuring that nurses and staff at the Jail were trained to recognize and treat inmates medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a policy, custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor Jail staff were able to recognize and provide adequate or

competent treatment for Mr. Shaw's medical conditions as they occurred on December 26, 2018 and after.

173.    As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical needs and safety of inmates, Defendants were allowed or encouraged to refuse to provide adequate medical treatment to Mr. Shaw which led to his suffering and damages.

174.    Despite the fact that treating an ulcer on a patient with a prior hernia surgery, like Mr. Shaw, is a fairly common medical procedure, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that Ms. Lammers was properly trained and/or qualified to perform such a procedure.

175.    The Supervising Defendants and Does I–XX are vicariously, jointly, and severally liable for Mr. Shaw's damages caused by the negligent conduct of Ms. Lammers.The Supervising Defendants knew of the policies and customs which created a serious risk of harm and constitutional violations of the inmates, including Mr. Shaw.

176.    The Supervising Defendants were responsible for ensuring that incarcerated people at the Jail received timely, responsive, quality medical care.

177.    Supervising Defendants were also responsible to arrange for all levels of healthcare for inmates; to assure quality accessibility, and timeliness of health services for inmates; for the training and supervision of all medical personnel; and for the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, and officially sanctioned customs relating to the provisions of medical care at the Jail.

178.   The Supervising Defendants failed in meeting those responsibilities as evidenced by Mr. Shaw's treatment, suffering, and damages, the actions and misactions of all Defendants which proximately caused Mr. Shaw's damages, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 52.

179.   The Supervising Defendants condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Mr. Shaw.

180.   This culture, customs, and policies, includes, but is not limited to, unreasonable barriers to medical treatment, the failures of Jail staff to make certain that nurses or physicians respond to serious medical conditions, and failure of nurses to evaluate and refer for appropriate diagnosis and treatment to those detainees who are experiencing life threatening injuries.

181.   By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, the Supervising Defendants have contributed to, and caused Mr. Shaw's damages.

182.   The Supervising Defendants, which include TFC, are liable for Mr. Shaw's damages.

183.   Plaintiff is entitled to punitive damages, as may be allowed by law, due to Defendants' willful, wanton, and grossly reckless conduct.

184.    Plaintiff is entitled to attorney's fees and costs against Defendants under 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against the Defendants as follows:

1.      For general compensatory damages in an amount to be determined at trial;

2.      For Mr. Shaw's pain and suffering in an amount to be determined at trial;

3.      For pre-judgment interest on the damages assessed by the verdict of the jury, as

allowed by law;

4.      For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42

U.S.C. 1988 and Code 6-918A, and Idaho Code 12-121, I.R.C.P. 54(e);

5.      For such other and further relief as the Court deems just and proper.


DATED this 21st  day of December, 2020.


                    MAY, RAMMELL AND WELLS, CHTD.
                    *Attorneys for Plaintiff*


                     */s/ Kyle R. May*_____
                    KYLE R. MAY